```
_____
                               )
NATIONWIDE MUTUAL INS. CO.,     )
                               )
            Plaintiffs,         )
                               )   CIVIL NO. 13-cv-12910-PBS
            v.                  )   CIVIL NO. 14-cv-12046-PBS
                               )
                               )
LIBERTY MUTUAL INS. CO.,        )
                               )
            Defendants.         )
_____)
```

**MEMORANDUM AND ORDER**

November 6, 2014

Saris, Chief Judge.

This action arises out of a never-ending reinsurance dispute over the meaning of contract terms as they relate to billing claims between Nationwide Mutual Insurance Company and National Casualty Company (collectively, "Nationwide") and Liberty Mutual Insurance Company ("Liberty"). An Arbitration Panel handed down its decision on June 26, 2013, and the Massachusetts Superior Court confirmed the Award. Leapfrogging between state and federal court, the parties now continue to dispute the same contract provisions in the context of "new" reinsurance claims.

Two motions are before this Court: first, Nationwide's motion to compel arbitration of the dispute arising out of the

"new" claims,[1] and second, Nationwide's motion to vacate the
Arbitration Panel's Clarification of its initial Award.[2] After
hearing, the motion to compel is **<u>ALLOWED</u>** in part and **<u>DENIED</u>** in
part. The motion to vacate is **<u>ALLOWED</u>**.

<u>BACKGROUND</u>

*A.    The Arbitration Dispute*

Between 1972 and 1983, Nationwide and Liberty entered into a
series of Excess of Loss Reinsurance Contracts ("Treaties"),
which provided that Nationwide, the reinsurer, would indemnify
Liberty against certain covered losses. The Treaties contain
arbitration clauses, which provide,

> "As a condition precedent to any right of action
> hereunder, any dispute arising out of this Agreement shall
> be submitted to a decision of a board of arbitration
> composed of two arbiters and an umpire..."[3]

The heart of the dispute involves the meaning of the Access to
Records Clause, which reads,

> "The Reinsurers or their duly appointed representatives
> shall at reasonable times, have free access to all books and
> records of the company and its agents or attorneys for the
> purpose of obtaining any information concerning this
> reinsurance or the subject matter thereof."[4]

---

[1] No. 13-cv-12910, Renewed Mot. to Compel Arb., Docket No. 31.

[2] No. 14-cv-12046, Mot. to Vacate Arb. Ruling, Docket No. 2.
[3] No. 13-cv-12910, Pet. to Compel Arb. ¶ 11, Docket No. 1.
Another arbitration clause provides,
> "In the event of any dispute or difference of opinion,
> arising with respect to this Contract, it is hereby agreed
> that such dispute or difference of opinion shall be
> submitted to arbitration." <u>Id.</u>
[4] Pet. to Compel Arb. ¶ 13.

In June 2013, a dispute arose regarding policies issued to Houdaille Industries, Inc. ("Houdaille claim"). According to Liberty, Nationwide had failed to adopt coverage positions and make claims determinations as required by the Treaties. For its part, Nationwide accused Liberty of violating the Access to Records Clause. After arbitration, the Panel issued its "Final Order on Contract Interpretation and Interim Order Regarding Houdaille Claim" ("Award") on June 26, 2013. Only paragraphs 1 and 3 are now relevant:

> "1.    The "Access to Records" provision of the Treaties and the "Claims Against Reinsurers" provisions of Section 5 of Exhibit A to the Treaties...create independent rights and obligations. Exercise of rights under the Access to Records Provision of the Treaties is not a pre-condition to [Nationwide's] payment obligations under Section 5[...]
>
> 3.    Billings of future claims under the Treaties shall be paid, paid subject to a reservation of rights or denied within 60 days of [Nationwide's] receipt of billing and status packages generally of the form and content as [those related to the Houdaille claim]. During the 60 day period [Liberty] shall make a good faith effort to respond to reasonable requests by [Nationwide] for additional information or documents."[5]

Shortly thereafter, Liberty resubmitted a number of previously billed, but unresolved, claims to Nationwide, including six claims relating to Plastics Engineering Company; Rogers Corporation; Lone Star Industries, Inc.; Hoyt Manufacturing Company; John H. Hampshire, Inc.; and Airco,

---

[5] No. 14-cv-12046, Opp. To Mot. to Compel Arb., Docket No. 6.

Inc./The BOC Group, Inc. (collectively, its "resubmitted claims"). Rather than adopt coverage positions within the 60-day period set forth in the Award, however, Nationwide demanded arbitration against Liberty regarding five of the six resubmitted claims, as well as five additional claims.[6] Liberty, in turn, requested that the Arbitration Panel enforce its Award upon the six resubmitted claims. On October 15, 2013, the Panel determined that it lacked jurisdiction to address Liberty's resubmitted claims, which it had neither considered nor resolved during the Houdaille arbitration. The Panel also noted, however, that it was "disappointed and perplexed by Nationwide's apparent decision to flagrantly ignore paragraph 3 of the [Award]." No. 14-cv-12046, Hannon Aff., Docket No. 4, Ex. J.

Liberty then filed a motion in Massachusetts Superior Court to confirm the Award, in response to which Nationwide filed an opposition seeking to vacate a portion of the Award not currently at issue. On October 29, 2013, the state court confirmed the Award in its entirety, denying Nationwide's motion for partial vacatur. The dispute did not abate, and Liberty filed a Motion to Enforce in the Superior Court on November 4, 2013, again seeking

---

[6] Nationwide did not seek arbitration as to the Lone Star claims. The additional claims concern Dexter Midland Company; Greene Tweed & Company; International Multifoods; Park Motor Sales; and The Riley Company. At the hearing, Liberty asserted that these are all closed claims, so there is nothing to arbitrate. The Court does not address this issue, as it was not briefed and there is no record on point.

application of the initial Award to its six resubmitted claims. Shopping, Nationwide promptly filed a petition to compel arbitration in this court pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, alleging that Liberty had improperly refused to arbitrate a dispute under the Access to Records Clause. This Court stayed the proceeding pending resolution of the state court action.

### B.   The Arbitration Panel's Clarification

Before the Superior Court had ruled on Liberty's Motion to Enforce, on March 6, 2014, Liberty took preemptive action, seeking clarification from the Arbitration Panel of the phrase "good faith effort to respond to reasonable requests" as contained in the Award. Hannon Aff., Ex. G. Nationwide opposed this request, arguing that the Panel lacked jurisdiction to clarify the Award and that, in any event, Liberty's motion was untimely pursuant to the Massachusetts Arbitration Act ("MAA"), G. L. c. 251, § 9.

Notwithstanding Nationwide's protestations, the Arbitration Panel issued the requested clarification by email on April 7, 2014. The Panel concluded:

> "As stated in our June 26, 2013 Order, Nationwide has an obligation to pay, pay subject to a reservation of rights, or deny within 60 days of receipt of a billing subject ONLY to receipt of status reports and billing packages in similar form as those issued in connection with the Houdaille claim. Nationwide's obligation to pay, pay subject to a reservation of rights or deny within 60 days of receipt of a billing is NOT conditioned upon Nationwide making any requests for

-5-

information or documents during the 60 day period and is NOT conditioned on Liberty Mutual responding to any requests that may be made during that period."[7]

Based on its initial objections, Nationwide then filed a Motion to Vacate the April 7, 2014 Clarification in this court.

### C. State Court Ruling

Shortly after the Panel issued its clarification, the Superior Court partially allowed Liberty's Motion to Enforce the Award upon the six resubmitted claims "to the limited extent that...Nationwide is not entitled under the Treaties...to delay its determination on any claim pursuant to the provisions of Paragraph 3 (presented either pre or post the date of the Arbitration Award) by seeking access to records." Renewed Mot. to Compel, Ex. A. Denying Liberty's Motion in all other respects, the court declined to decide whether the resubmitted billings constituted "future claims" under paragraph 3 of the Award. The court further noted that it had neither considered nor relied on the Panel's email Clarification of its initial Award. Subsequently, Nationwide filed a Renewed Motion to Compel Arbitration in this Court.

### DISCUSSION

### A. Motion to Compel Arbitration

This Court has jurisdiction to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), which provides that "[a]

---

[7] Hannon Aff., Ex. A.

-6-

party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court...for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Pursuant to this provision, Nationwide seeks further arbitration of disputes arising out of Liberty's resubmitted claims, arguing that the Panel did not address all of the parties' prospective rights and obligations under the Access to Records Clause and that arbitrable issues remain. Liberty maintains, in turn, that the Award did, indeed, resolve the entire scope of the parties' future relationship.

In its order, the Superior Court addressed two primary issues: whether Liberty's resubmitted billings were "future claims" as per paragraph 3 of the Arbitration Award and whether Nationwide was entitled to delay its coverage determinations until Liberty had responded in good faith to reasonable records requests. As to the first, the Superior Court declined to interpret the meaning of the phrase "future claims" or decide whether Liberty's resubmitted claims would so qualify, noting that "[b]lack letter arbitration jurisprudence would appear to preclude a court's attempting to make such a determination under these circumstances." Renewed Mot. to Compel, Ex. A. See, e.g., Derwin v. Gen. Dynamics Corp., 719 F.2d 484, 491 (1st Cir. 1983) (courts "have often declined to rule that an arbitral award is

-7-

binding in a later, factually similar context," for fear of
"extend[ing] the award to a new, previously unresolved dispute").

However, the Superior Court enforced the Award as to the
parties' "independent rights and obligations" concerning access
to records and payment determinations, as the parties had
"already arbitrated and resolved the manner and timeframe in
which Nationwide must review reinsurance billings." Renewed Mot.
to Compel, Ex. A. The Arbitration Panel had, in the court's view,
decisively concluded that Nationwide's duty to adopt coverage
positions "on any claim (presented either pre or post the date of
the Arbitration Order)" was not contingent on Liberty's
disclosure of records. Id. To affirm Nationwide's position –
namely, that it need not make claims determinations until Liberty
had shown "good faith" in responding to Nationwide's records
requests - would therefore "eviscerate Paragraph 1 of the
Arbitration Order and send everyone back to square one." Id. This
decision was not appealed.

Essentially, Nationwide asks this Court to revisit and, in
effect, reverse certain aspects of the Superior Court's ruling.
Pursuant to the doctrine of issue preclusion, I decline to do so.
See Newman v. Krintzman, 723 F.3d 308, 310 (1st Cir. 2013)
(federal courts must give preclusive effect to a state-court
judgment if state court would do so); see also Keystone Shipping
Co. v. New Eng. Power Co., 109 F.3d 46, 50 (1st Cir. 1997) (state

court judgment collaterally estopped federal litigation of arbitrability issue). Nationwide "cannot seek to undo or redo in federal court what has already been done in state court." Keystone, 109 F.3d at 52.

Nationwide argues that this Court should not give the arbitration award preclusive effect under longstanding federal caselaw. The First Circuit has long adhered to "the general rule that the preclusive effect of a prior arbitration is an arbitrable issue," Emps. Ins. Co. of Wausau v. OneBeacon Am. Ins. Co., 744 F.3d 25, 29 (1st Cir. 2014) (declining to give preclusive effect to arbitration award where parties seeking enforcement of award were entirely different from parties to whom award was initially applied, and request came nearly five years after award's entry). This is so because "a res judicata objection based on a prior arbitration proceeding is...a component of the dispute on the merits and must be considered by the arbitrator, not the court." Id. at 27, quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1132 (9th Cir. 2000). However, "where an arbitral award is both clearly intended to have a prospective effect and there is no colorable basis for denying the applicability of the existing award to a dispute at hand," the First Circuit has also concluded, "a court [will] order compliance with the award rather than require the parties to proceed anew." Derwin, 719 F.2d at 491.

While the limits on the <u>Derwin</u> exception are not clear, the
Superior Court's order seems to fit squarely within its
parameters. The Superior Court concluded that the Arbitration
Award had prospectively determined the time frame within which
Nationwide must adopt coverage positions, and concluded as well
that Nationwide could not permissibly relitigate that precise
issue in arbitration with Liberty. Accordingly, the Court allows
Nationwide's motion to compel arbitration over the six
resubmitted claims. The Court, however, denies the motion to
compel insofar as it would require relitigation of the
Arbitration Panel's decision in paragraph 3.

B.    *Motion to Vacate Clarification of Arbitration Award*

Nationwide further moves to vacate the Panel's Clarification
of its initial Award. Nationwide argues, first, that the
Clarification was untimely under M.G.L. c. 251, § 9, and,
alternatively, that the Panel lacked authority to issue the
Clarification. Liberty, of course, is not on Nationwide's side.
Because Liberty was not entitled to seek any clarification of the
Award nearly six months after its issuance, Nationwide's motion
to vacate is on target.

Both parties agree that Massachusetts law governs when and
whether an arbitration panel may clarify a previously-issued
order.[8] Although the FAA addresses all matters concerning the

---

[8] Ordinarily, a choice-of-law analysis determines whether a state
or federal time frame will govern a party's request for

validity, enforceability, and interpretation of an agreement to arbitrate, New Eng. Energy v. Keystone Shipping Co., 855 F.2d 1, 4 n.2 (1st Cir. 1988), it is silent with respect to an arbitrator's authority to modify an Award. See 9 U.S.C.§ 1 et seq. In these circumstances,"[w]hile the FAA has some preemptive force, it does not entirely displace state arbitration law," New Eng. Utilities v. Hydro-Quebec, 10 F. Supp. 2d 53, 59-60 (D. Mass. 1998), which provides that an application for modification of an arbitration award "shall be made within twenty days after the delivery of the award to the applicant." G. L. c. 251, § 9; see Baxter Health Care, Corp., v. Harvard Apparatus, Inc., 35 Mass. App. Ct. 204, 207, 208-209 (1993) (since "an arbitrator can modify, correct or clarify his award only within the limits and upon the conditions described in § 9," arbitration panel could not materially alter award more than twenty days after issuance); see also Ciampa v. Chubb Group of Ins. Cos., 26 Mass. App. Ct. 941-42 (1988).

Liberty claims that the Clarification does not fall within the terms of G. L. c. 251, § 9, and that the statute's time limit accordingly does not apply. Liberty first emphasizes that § 9 references only an arbitrator's power to "modify" or "correct"

---

modification. See New Eng. Utilities, 10 F. Supp. 2d at 59-60. Since neither party urges this Court to apply federal law, there is no need to rehearse this analysis, especially given that Liberty's request – made nearly six months after Panel issued its Award – was untimely under both the twenty-day Massachusetts deadline and the three-month FAA deadline.

his previous award, and does not mention any authority to "clarify" such an award. Moreover, Liberty maintains, § 9 encompasses only those amendments that materially alter an initial award.

Neither argument finds succor in the text of the statute or the applicable caselaw. To start, Liberty ignores the fact that, according to § 9, a modification or amendment of an arbitration award may be "for the purpose of clarifying the award." G. L. c. 251, § 9. Massachusetts courts have understood this phrase to include requests for clarifications as well as for modifications or amendments. In Baxter, for instance, the Massachusetts Appeals Court repeatedly termed the arbitration panel's action a "clarification" of its initial award. See 35 Mass. App. Ct. at 209 (party submitted application for "clarification" of initial award; panel then issued requested "clarifying awards"); Harvard Cmty. Health Plan, Inc. v. Zack, 33 Mass. App. Ct. 649, 651 n.2 (1992) (parties may request that arbitrator "clarify the precise meaning of his award" under § 9). It concluded that the "clarifying awards [were] a nullity." 35 Mass. App. Ct. at 209. There is no authority for Liberty's proposition that a party need only abide by the MAA's twenty-day deadline if the modification it seeks will materially impact the terms of the initial award.

In any event, one judge's clarification is another's modification. The judicial label does not determine the

applicability of the statute. The Arbitration Panel's email of April 7, 2014, expressly provided that Nationwide's payment obligations under the initial Award did not hinge on Liberty's compliance with the Access to Records Clause within the 60-day period, even if Nationwide asked for records during that time. See <u>Baxter</u>, 35 Mass. App. Ct. at 209. While there is a strong argument that the original award is reasonably read to impose that precise time framework, and the Superior Court interpreted it that way, the express clarification/modification was hardly immaterial.

Liberty was thus "not timely in making its motion to correct the award and cannot now circumvent the time limitation through a convoluted reading of the language of [the MAA]." <u>Quirk v. Data Terminal Sys., Inc.</u>, 394 Mass. 334, 339 (1985) (strictly construing thirty-day deadline for judicial modification of arbitration award pursuant to G. L. c. 251, § 13); <u>see also Baxter</u>, 35 Mass. App. Ct. at 209.

### <u>ORDER</u>

For the foregoing reasons, Nationwide's renewed motion to compel arbitration (No. 13-cv-12910, Docket No. 31) is **<u>ALLOWED</u>** with respect to the six resubmitted claims, but **<u>DENIED</u>** with respect to the request to relitigate the arbitration panel's conclusion in paragraph 3. Nationwide's motion to vacate the

panel's emailed "clarification" (No. 14-cv-12046, Docket No. 2)

is **ALLOWED**.

         /s/ PATTI B. SARIS
        Patti B. Saris
        Chief United States District Judge